# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

538

KA 13-01797

PRESENT: SCUDDER, P.J., SMITH, SCONIERS, WHALEN, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

KURT J. HAZZARD, DEFENDANT-APPELLANT.

---

BRUCE R. BRYAN, SYRACUSE, FOR DEFENDANT-APPELLANT.

LEANNE K. MOSER, DISTRICT ATTORNEY, LOWVILLE, D.J. & J.A. CIRANDO, ESQS., SYRACUSE (JOHN A. CIRANDO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Lewis County Court (Daniel R. King, J.), rendered August 16, 2013. The judgment convicted defendant, upon a jury verdict, of rape in the first degree, rape in the third degree, criminal sexual act in the first degree, criminal sexual act in the third degree and endangering the welfare of a child.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, rape in the first degree (Penal Law § 130.35 [1]), arising from allegations that he had sexual intercourse with a 15-year-old girl on December 25, 2011. On appeal, defendant contends that County Court abused its discretion in denying his recusal motion. We reject that contention. It is well settled that, "[u]nless disqualification is required under Judiciary Law § 14, a judge's decision on a recusal motion is one of discretion . . . 'This discretionary decision is within the personal conscience of the court when the alleged appearance of impropriety arises from inappropriate awareness of nonjuridical data' . . . [Thus,] for any alleged bias and prejudice to be disqualifying it 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case' " (*People v Glynn*, 21 NY3d 614, 618; *see People v Alomar*, 93 NY2d 239, 246). "Even . . . when recusal is sought based upon 'impropriety as distinguished from legal disqualification, the judge . . . is the sole arbiter' " (*People v Moreno*, 70 NY2d 403, 406). Defendant does not contend that recusal was mandatory, and we agree with the People that the court did not abuse its discretion in denying defendant's motion.

We reject defendant's further contention that the court erred in refusing to suppress a towel upon which both the victim's DNA and

defendant's DNA, sperm, and seminal fluid were found.  At the time of the offense, the victim's grandmother had custody of the victim and her siblings, and they and defendant all lived in the same house.  The towel was found in that house by the victim and her mother's boyfriend, who went there to retrieve the victim's belongings after this incident was reported to the authorities.  "It is well settled that a search by a private person, even an unlawful search, does not implicate Fourth Amendment considerations" (*People v Adler*, 50 NY2d 730, 736-737, *cert denied* 449 US 1014), unless the private conduct is "so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections" (*People v Ray*, 65 NY2d 282, 286).  Here, defendant failed to demonstrate "a clear connection between the police and the private investigation . . . ; completion of the private act at the instigation of the police . . . ; close supervision of the private conduct by the police . . . ; [or] a private act undertaken on behalf of the police to further a police objective" (*Ray*, 65 NY2d at 286; *see People v Ruppert*, 42 AD3d 817, 817-818, *lv denied* 9 NY3d 964).

Contrary to defendant's further contention, viewing the evidence in light of the elements of the crimes relating to the December incident as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we conclude that the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).  It is well settled that " 'those who see and hear the witnesses can assess their credibility and reliability in a manner that is far superior to that of reviewing judges who must rely on the printed record' " (*People v Woolson*, 122 AD3d 1353, 1354, quoting *People v Lane*, 7 NY3d 888, 890), and that "[t]he credibility of the victim and the weight to be accorded her testimony were matters for the jury" (*People v Halwig*, 288 AD2d 949, 949, *lv denied* 98 NY2d 710; *see People v Gray*, 15 AD3d 889, 890, *lv denied* 4 NY3d 831).  Here, we conclude that the jury's determination to credit the victim's testimony with respect to this incident is supported by the weight of the evidence, including her testimony that defendant held her down and restrained her while forcing her to engage in sexual intercourse (*see People v Littebrant*, 55 AD3d 1151, 1154-1155, *lv denied* 12 NY3d 818), and DNA evidence linking defendant to the crimes (*see generally People v Mitchell*, 43 AD3d 1337, 1338, *lv denied* 9 NY3d 1036; *People v Griffin*, 41 AD3d 1285, 1287, *lv denied* 9 NY3d 923, *reconsideration denied* 9 NY3d 990).  Indeed, we note that the People's DNA expert testified that, in "the semen-stained cutting from the bath towel, the sperm fraction is a mixture profile consistent with DNA from [defendant] mixed with DNA from" the victim.

Defendant further contends that the court erred in prohibiting him from questioning the People's expert regarding prior sexual conduct by the victim.  We reject that contention.  "Evidence of the victim's prior sexual conduct did not fall within any of the exceptions set forth in CPL 60.42 (1) through (4), and defendant failed to make an offer of proof demonstrating that such evidence was relevant and admissible pursuant to CPL 60.42 (5)" (*People v Brink*, 30 AD3d 1014, 1015, *lv denied* 7 NY3d 810; *see People v Wright*, 37 AD3d

1142, 1143, *lv denied* 8 NY3d 951; *see also People v Williams*, 61 AD3d 1383, 1383, *lv denied* 13 NY3d 751).  Defendant failed to preserve for our review his contention that the court should have declared a mistrial after making a gesture that allegedly demeaned defense counsel, inasmuch as defense counsel initially made a motion for a mistrial regarding the alleged gesture but withdrew it "before the court rendered its decision" (*People v Corbett*, 258 AD2d 919, 919, *lv denied* 93 NY2d 898).  We decline to exercise our power to review defendant's contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

Finally, the sentence is not unduly harsh or severe.

All concur except SCONIERS, J., who dissents and votes to reverse in accordance with the following memorandum:  I respectfully dissent. Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), I conclude that the verdict finding defendant guilty of the charges arising from the incident on December 25, 2011 is against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).  I would therefore reverse the judgment, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.

"The Court of Appeals has recently reiterated that, in reviewing the weight of the evidence, we must 'affirmatively review the record; independently assess all of the proof; substitute [our] own credibility determinations for those made by the jury in an appropriate case; determine whether the verdict was factually correct; and acquit a defendant if [we are] not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt' " (*People v Oberlander*, 94 AD3d 1459, 1459, quoting *People v Delamota*, 18 NY3d 107, 116-117).  I am not convinced that guilt was proven beyond a reasonable doubt.  Although I am cognizant that the jury's credibility determinations are entitled to great deference, in this case the credibility of certain prosecution witnesses, including the victim, is "manifestly suspect" (*People v O'Neil*, 66 AD3d 1131, 1133; *see People v Bastow*, 217 AD2d 930, 931, *lv denied* 86 NY2d 872). Indeed, "the jury evidently had little confidence in the victim's credibility since it acquitted defendant of all counts in connection with [two other] incidents" in August and November 2011 (*O'Neil*, 66 AD3d at 1134).  Another prosecution witness admitted that she made a false allegation of rape against defendant, and gave conflicting accounts of defendant's whereabouts at the time of the December 25, 2011 incident.

In addition, the testimony concerning the discovery by the victim and her mother's boyfriend of the semen-stained bath towel, the crucial item of evidence against defendant, " 'is incredible and unbelievable, that is, impossible of belief because it is . . . contrary to experience' " (*People v Garafolo*, 44 AD2d 86, 88; *see People v Wallace*, 306 AD2d 802, 802-803).  Moreover, the towel was discovered three days following the incident and, during the interim between the alleged crime and its discovery, the towel was accessible to persons who had an acrimonious relationship with defendant.  Those

circumstances thoroughly undermined any weight that should otherwise have been accorded to the only physical evidence against defendant (*cf. People v Ortiz*, 80 AD3d 628, 629-630, *lv denied* 16 NY3d 862).

Finally, "[e]ven assuming that the verdict of guilt was not against the weight of the evidence, pursuant to our interest of justice jurisdiction (*see*, CPL 470.15 [3] [c]), [I] would reverse the judgment and dismiss the indictment because the evidence in this case leaves [me] with a very disturbing feeling that guilt has not been satisfactorily established; [that is,] that there is a grave risk that an innocent man has been convicted" (*People v Gioeli*, 288 AD2d 488, 489 [internal quotation marks omitted]; *see generally People v Carter*, 63 NY2d 530, 536; *People v Kidd*, 76 AD2d 665, 668, *lv dismissed* 51 NY2d 882).

Entered:  June 19, 2015                          Frances E. Cafarell
                                                 Clerk of the Court